IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 4:14-CV-50-FL

| | |
|---|---|
| STEVEN GLENN: JOHNSON and ) | |
| STEVEN GLENN JOHNSON ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | ORDER |
| THE STATE OF NORTH CAROLINA, ) | |
| THE UNITED STATES OF AMERICA, ) | |
| and THE FEDERAL RESERVE, And all ) | |
| those similarly situated, ) | |
| ) | |
| Defendants. ) | |

This matter comes now before the court on the motion to dismiss filed by defendants United States of America ("United States") and the Federal Reserve ("Federal Reserve") (collectively, "Federal Defendants") (DE 10). The motion has bee fully briefed, and the issues raised are ripe for adjudication. For reasons given, the court grants the motion to dismiss, and directs plaintiff to file a particularized amended complaint.

**STATEMENT OF THE CASE**

Filing *pro se*, plaintiff commenced this action on March 28, 2014, with a 75 page "Counter Claim & Cross Claim," construed as a complaint, alleging defendants' use of a "series of claims/causes . . . either to deprive [plaintiff] of his rights to life, liberty and property . . . or in the extreme, plunder" the plaintiff. (Compl., ¶ 6(c). On June 4, 2014, Federal Defendants filed a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(5) and 12(b)(6) (DE 9).

Plaintiff has responded in opposition, and Federal Defendants replied. On June 28, 2014, plaintiff filed an addendum to his affidavit in opposition to the motion to dismiss.

**STATEMENT OF FACTS**

As is relevant to Federal Defendants, the complaint alleges that plaintiff was "immediately deprived of all property" upon his birth in 1967, by virtue of the Emergency Banking Act of 1933. (Compl. at ¶ III.6(c)). He further alleges that, while defendant Federal Reserve has "plundered the people of this nation . . . by deceitfully forming a monopoly in banking," in fact "an American who issues a promissory note is also a 'bank' and a 'banker' and if he/she is an American National then that person is a 'national bank' and that person's promissory notes are National Bank Notes authorized under 31 U.S.C. [§] 5103 to be 'legal tender.'" (Id. at ¶ III.6(d)). Plaintiff alleges that he exercised his right to "just compensation" by issuing his own negotiable instruments and promissory notes, but was prevented from doing so by defendants. (Id.). Plaintiff further alleges that defendant United States "has arrested, jailed, prosecuted and sentenced to prison [plaintiff] through methods of coercion." (Id. at ¶ III.6(e)).

Plaintiff's complaint asserts 52 "causes of action" pertaining to these activities. "Causes" 15-18 and 24-52 all appear to be directed at defendant North Carolina or its agents. On those causes at issue in the instant motion, plaintiff alleges that defendant Federal Reserve engaged in a series of fraudulent activities by reversing plaintiff's payments for child support, automotive services, and the purchase of a motorcycle, ranging from December 2008 to January 2009. Plaintiff also alleges that he is party to a contract with defendants, and that defendants violated the contract "by failing to acknowledge the validity of the negotiable instruments issued by [plaintiff] and by further prosecuting [plaintiff]." (Compl., ¶ IV.26).

2

Plaintiff, who alleges that he has type 1 diabetes, also states that defendant United States, through its agents, "failed to allow or refused to allow" him to receive insulin until he agreed to state that he understood the charges made against him.[1] (Id. ¶ IV.23). Finally, plaintiff alleges that defendant United States, through the Bureau of Prisons ("BOP"), denied him eye care, dental care, and insulin for his diabetes, and refused to allow him to communicate with his father before his father died.[2]

Plaintiff asserts 22 "claims" related to these "causes," including misprision of a felony, 18 U.S.C. § 4; violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968; criminal conspiracy to deprive rights, 18 U.S.C. § 241; deprivation of rights under color of law, 18 U.S.C. § 242; violations of civil rights under 42 U.S.C. §§ 1983, 1985, 1986, and 1988; abuse of process, assault, battery, excessive bail, false accusation, failure to identify, fraudulent

---

[1] In full, plaintiff's allegations regarding this incident are as follows:

> The UNITED STATES, under the office of George Holding and Eric Evenson, in association with its agents, specifically Paul Cox of the Federal Bureau of Investigation, Tommy Kim of the US Department of the Treasury, the United States Marshals, and the New Hanover County, North Carolina, Sheriff's Department compelled [plaintiff] to state in open court that he understood charges made against [plaintiff], that he does not understand and had previously stated to the court that he did not understand the same charges. [Plaintiff], being a Type I Diabetic since January 1980 and one hundred percent dependent on insulin injections, was not allowed to receive or administer to himself an insulin injection until he agreed to recant his previous denial that he 'understood' the charges made against [plaintiff]. The aforesaid agents above failed to allow or refused to allow [plaintiff] to be administered his daily injection prior to making his first "restricted special appearance" in court.

(Compl., ¶ 23).

[2] In full, plaintiff's allegations regarding this incident are as follows:

> The UNITED STATES through willful neglect of the Bureau of Prisons denied [plaintiff] adequate care for his eyes while knowing that he was suffering from Diabetic Peripheral Retinopathy. The BOP denied him adequate care for his teeth as well. The BOP denied him proper amounts of insulin and the prescribed type of insulin known as Lantis during his confinement. To further exasperate the situation, the BOP forced [plaintiff] into solitary confinement or jail, outside of the general population of the prison, for no justifiable reason leaving him with no way to control his diet and insulin. The BOP denied [plaintiff] access to communicate with his father before his expected death on December 14, 2011. [Plaintiff] never saw his father again after sentencing. This emotional stress and damage is irreparable.

(Compl., ¶ 105).

3

bond, intentional infliction of emotional and financial distress, malicious prosecution, negligence, negligent infliction of emotional distress, and unlawful seizure of property. (Id. at ¶ III.6(w)). He does not specify how these "claims" are linked to his 52 "causes."

For his injuries, plaintiff seeks relief including that the court order Federal Defendants to recognize plaintiff "as their Creditor with all rights due a Creditor," (Compl. ¶ XXX(b)), to honor his promissory notes, and to expunge past charges. Plaintiff also seeks damages approximating $28 billion, and asks that the court grant "such other and further relief as to the Court may seem just and proper." (Compl., ¶ XXX(m)).

The public record provides some context for the complaint.[3] Plaintiff is a convicted felon, having pleaded guilty on March 14, 2011, to one count of mail fraud for using the mail to place a counterfeit money order to North Carolina Child Support Centralized Collections. United States v. Johnson, No. 4:10-CR-95, E.D.N.C. Plaintiff was sentenced July 7, 2011, to 16 months' imprisonment with credit for time served in state custody. His active federal sentence was discharged September 4, 2012, and he is presently on supervised release. Plaintiff did not appeal his conviction or sentence. Rather, he filed a motion to vacate pursuant to 28 U.S.C. § 2255, which was dismissed on March 25, 2014.

Plaintiff also has two state court convictions, for obtaining property by false pretense, and forgery of an instrument and worthless check, related to a transaction involving a motorcycle in 2009. North Carolina v. Johnson, No. 09-CRS-52519 and No. 09-CRS-52520 (Iredell Cnty. Sup. Ct.).

---

[3] The court takes judicial notice of these facts pursuant to Federal Rule of Evidence 201. On a motion to dismiss, courts "may properly take judicial notice of matters of public record." Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

## DISCUSSION

A.  Standard of Review

    1.    Rule 12(b)(1)

A Rule 12(b)(1) motion challenges the court's subject matter jurisdiction, and the plaintiff bears the burden of showing that federal jurisdiction is appropriate when challenged by the defendant. McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936); Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). Such a motion may either assert the complaint fails to state facts upon which subject matter jurisdiction may be based or attack the existence of subject matter jurisdiction in fact, apart from the complaint. Adams, 697 F.2d at 1219. The latter type of attack is used when a court's limited jurisdiction precludes hearing the case brought. Id. Since the court's power to hear the case is at issue in a Rule 12(b)(1) motion, the court is free to weigh the evidence to determine the existence of jurisdiction. Id. This includes exhibits outside the pleadings. Williams v. United States, 50 F.3d 299, 304 (4th Cir. 1995).

    2.    Rule 12(b)(6)

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992); see also Edwards v. City of Goldsboro, 178 F.3d 231, 243-44 (4th Cir. 1999). A complaint states a claim if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Asking for plausible grounds . . . does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal [the] evidence" required to prove the claim. Twombly, 550 U.S. at 556.

Furthermore, the complaint need not set forth "detailed factual allegations," but instead must simply "plead sufficient facts to allow a court, drawing on 'judicial experience and common sense,' to infer 'more than the mere possibility of misconduct.'" Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 256 (4th Cir. 2009) (quoting Iqbal, 556 U.S. at 679). In evaluating the complaint, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Id. at 255 (citations omitted).

When considering a Rule 12(b)(6) motion, a court must keep in mind the principle that "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)); Noble v. Barnett, 24 F.3d 582, 587 n.6 (4th Cir.1994). Nevertheless, Erickson does not undermine the requirement that a pleading contain "more than labels and conclusions." Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (quoting Twombly, 550 U.S. at 555). Furthermore, while a *pro se* complaint must be construed liberally, it is not the court's obligation "to discern the unexpressed intent of the plaintiff." Laber v. Harvey, 438 F.3d 404, 413 n. 3 (4th Cir. 2006).

B.   Analysis

   1.   Sovereign Immunity

As a sovereign, defendant United States is immune from all suits absent an express waiver of immunity from Congress. Welch v. United States, 409 F.3d 646, 650 (4th Cir. 2005); Radin v. United States, 699 F.2d 681, 684-85 (4th Cir. 1983). Sovereign immunity extends to defendant Federal Reserve as well. See Research Triangle Inst. v. Bd. of Governors of the Fed. Reserve Sys.,

6

132 F.3d 985, 987 (4th Cir. 1997). Waivers are strictly construed in favor of the sovereign. Id. Plaintiff has the burden of pointing to an "unequivocal waiver of immunity." Williams, 50 F.3d at 304. "If the plaintiff fails to meet this burden, then the claim must be dismissed." Welch, 409 F.3d at 651.

The complaint cites to a number of federal statutes that do not waive federal sovereign immunity, including 28 U.S.C. §§ 1331, 1337, 1343(a), and 1367(a); 42 U.S.C. §§ 1983, 1985, 1986, and 1988; and 18 U.S.C. §§ 1962, and 1964. Several of the cited statutes are sections of the criminal code which provide no private civil cause of action and do not demonstrate any intent by Congress to waive sovereign immunity. Moreover, the civil code statutes cited by plaintiff do not include an express waiver of sovereign immunity. See, e.g., Randall v. United States, 95 F.3d 339, 345 (4th Cir. 1996) ("[S]ection 1331 is not a general waiver of sovereign immunity.") (quotation marks omitted).

In response to the government's motion to dismiss, plaintiff expressly denies the obligation to show waiver under any act of Congress. Rather, he appears to maintain that the basis of jurisdiction is that the court is an Article III court under the Constitution, and that the Seventh Amendment requires he receive a jury trial.

However, "the fundamental principle of sovereign immunity limits the grant of judicial authority in Art. III." Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 98 (1984). Moreover, "[i]t has long been settled that the Seventh Amendment right to trial by jury does not apply in actions against the Federal Government." Lehman v. Nakshian, 453 U.S. 156, 160 (1981). "It hardly can be maintained that under the common law in 1791 jury trial was a matter of right for persons asserting claims against the sovereign. Whatever force the [Seventh] Amendment has therefore is derived because Congress, in the legislation cited, has made it applicable." Id.

7

Where plaintiff has expressly disavowed any statutory basis for his claims, it would appear that he raises his claims under Bivens v. Six Unknown Fed. Agents, 403 U.S. 388 (1971), which "established that victims of a constitutional violation by a federal agent have the right to recover against the official in federal court despite the absence of any statute conferring such a right." Carlson v. Green, 446 U.S. 14, 18 (1980). However, defendant United States has not waived sovereign immunity for such claims. See Reinbold v. Evers, 187 F.3d 348, 355 n. 7 (4th Cir. 1999) ("[T]he United States has not waived sovereign immunity in suits claiming constitutional torts"). "*Bivens* did not abolish the doctrine of sovereign immunity of the United States." Randall v. United States, 95 F.3d 339, 345 (4th Cir. 1996). "Any remedy under *Bivens* is against federal officials individually, not the federal government." Id. Accordingly, Federal Defendants must be dismissed from this action for lack of jurisdiction, pursuant to Federal Rue of Civil Procedure 12(b)(1).

Nevertheless, plaintiff's addendum requests that he be allowed to amend his complaint in light of deficiencies, before dismissal. (Addendum, ¶ 42). "While a potentially meritorious claim, particularly by a pro se litigant, should not be unqualifiedly dismissed for failure to state a claim unless its deficiencies are truly incurable, such an unqualified dismissal is entirely proper when the court has reviewed the claim and found it to be substantively meritless." McLean v. United States, 566 F.3d 391, 400-01 (4th Cir. 2009) (citation omitted). The complaint presents claims of both types noted in McLean.

In particular, the bulk of plaintiff's claims must be dismissed because it is clear that his allegations fail to state any claim for relief. Such claims are those based upon conspiracy regarding negotiable instruments. As explained below, the court finds these claims "substantively meritless." By contrast, two other sets of claims, related to defendant's treatment from the BOP and his

8

treatment at arraignment, may plausibly be remedied by further amendment, including by naming individual defendants responsible for the alleged violations.

2. Plausible Claims for Relief

a. Conspiracy Regarding Negotiable Instruments

As noted, to survive a motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. The bulk of plaintiff's complaint against Federal Defendants is premised on allegations of a vast conspiracy to deceive the public, vague statements regarding a contract, Federal Defendants' wrongful refusal to recognize negotiable instruments that plaintiff drafted, and prosecutions based upon those instruments. While plaintiff denies adhering to "redemptionist" or "sovereign citizen" theory, the substance of the complaint is obviously premised on similar ideas. See Bryant v. Washington Mut. Bank, 524 F. Supp. 2d 753, 758-59 and n. 8 (W.D. Va. 2007) (summarizing general concepts of "redemption" theory).

Federal district courts, including a number within this circuit, have consistently rejected claims based on similar theories as frivolous. Nuñez v. D.T.C., 4:13-244-TMC, 2013 WL 5409219, at *3 (D.S.C. Sept. 25, 2013); Ferguson-El v. Virginia, No. 3:10-CV-577, 2011 WL 3652327, at *3 (E.D. Va. Aug. 18, 2011); Bryant, 524 F. Supp. 2d at 760; United States v. Mitchell, 405 F. Supp. 2d 602, 606 (D. Md. 2005). Plaintiff's allegations in this complaint must receive the same treatment. While plaintiff may genuinely believe the facts he alleges, the law simply does not recognize that these allegations set forth a plausible claim. Accordingly, all claims based on such allegations are dismissed, with prejudice.

9

### b. Medical Needs and Arraignment

Two sets of factual allegations may be distinguished from those discussed above. First, plaintiff makes allegations regarding the treatment he received from BOP while imprisoned. (Compl., ¶ 5). A number of the allegations regard a lack of treatment for various medical conditions. To the extent plaintiff has disavowed that his action arises under the FTCA or other federal statutes, these allegations most closely resemble an Eighth Amendment claim under <u>Bivens</u> for denial of medical care. To properly state such a claim, the plaintiff must allege facts sufficient to show "deliberate indifference to serious medical needs." <u>Estelle</u>, 429 U.S. at 106. A "serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." <u>Iko v. Shreve</u>, 535 F.3d 225, 241 (4th Cir. 2008) (quotation marks omitted). An inmate is not entitled to choose his course of treatment. <u>See</u> <u>Russell v. Sheffer</u>, 528 F.2d 318, 318-19 (4th Cir. 1975) (per curiam). A prison official is deliberately indifferent to a serious medical need if he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." <u>Odom v. S.C. Dep't of Corr.</u>, 349 F.3d 765, 770 (4th Cir. 2003). "Deliberate indifference entails something more than mere negligence, . . . [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." <u>Farmer v. Brennan</u>, 511 U.S. 825, 835 (1994).

Plaintiff's allegations regarding his treatment from the BOP fail to meet this standard. With respect to plaintiff's eyecare, although he alleges that defendant United States knew of his Diabetic Peripheral Retinopathy, he alleges only that "[t]he United States through the willful neglect of the Bureau of Prisons denied [plaintiff] adequate care." (Compl., ¶ 105). He fails to allege any facts

10

Case 4:14-cv-00050-FL   Document 40   Filed 01/30/15   Page 10 of 14

concerning how his eyecare was denied. Similarly, the complaint fails to allege facts supporting that plaintiff's dental treatment presented a "serious medical need," that BOP officials knew of any such need, or that the BOP officials knew of and disregarded an excessive risk in failing to provide proper amounts of insulin. The complaint requires "more than labels and conclusions" regarding these claims. Giarratano, 521 F.3d at 304 n.5.

So far as plaintiff challenges his solitary confinement, some courts have concluded that inmates may enjoy a due process liberty interest in avoiding solitary confinement or isolation. See, e.g., Patel v. Moron, 897 F. Supp. 2d 389, 400 (E.D.N.C. 2012); Syndor v. Mahon, No. 3:10-CV-780, 2012 WL 604039, at *2 n. 4 (E.D.Va. Feb. 23, 2012). Here, that due process would arise under the Fifth Amendment. See Patel, 897 F. Supp. 2d at 394, 400. However, to establish a due process claim, a plaintiff must allege facts that suggest his solitary confinement imposed "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." Beverati v. Smith, 120 F.3d 500, 504 (4th Cir. 1997). Plaintiff's allegations regarding deprivation of insulin as a result of his confinement may rise to establish an "atypical and significant hardship," but as already explained he has failed to allege facts regarding the circumstances of this deprivation (e.g. how long he was deprived, whether BOP officials knowingly deprived him, etc.). The allegations provided are not enough to state a claim for this condition of plaintiff's detention.

Finally, with respect to plaintiff's claim that he was denied the opportunity to communicate with his father, prisoners do not have unlimited access to communications with the outside world. "Simply because prison inmates retain certain constitutional rights does not mean that these rights are not subject to restrictions and limitations." Bell v. Wolfish, 441 U.S. 520, 545 (1979). "The curtailment of certain rights is necessary, as a practical matter, to accommodate a myriad of institutional needs and objectives of prison facilities." Hudson v. Palmer, 468 U.S. 517, 524 (1984).

11

For these reasons, restrictions on outgoing inmate mail have been permitted. See Hill v. Terrell, 846 F. Supp. 2d 488, 491-92 (W.D.N.C. 2012). Likewise, courts have found that prisoners do not have an unqualified right to use the telephone. E.g., United States v. Alkire, No. 95-7885, 1996 WL 166400, at *1 (4th Cir. Apr. 10, 1996); McMillian v. Harrison, No. 5:11-CT-3181-FL, 2013 WL 4007545, at *5 (E.D.N.C. Aug. 5, 2013); Mbewe v. Unknown Names, No. AW-12-CV-3138, 2012 WL 5966533, at *3 (D. Md. Nov. 27, 2012); Sterling-Earl v. Gray, No. Civ. 7:06-CV-196, 2006 WL 1318367, at *6 (W.D. Va. May 15, 2006).

Here, plaintiff has alleged only that he was denied access to communicate with his father, that he never saw his father before his father's death, and that this caused him "emotional stress and damage." (Compl. ¶ 105). Plaintiff provides no specific instances or detail as to how he was denied access, how long he sought and was denied access, the means of communication he sought to use, whether BOP officials had any knowledge of his father's health condition, or other circumstances regarding his efforts to reach his father. While the court sympathizes with plaintiff for his loss, it cannot discern a claim from the facts alleged.

The second set of allegations that may be distinguished and separately analyzed from plaintiff's broad conspiracy theories regarding his negotiable instruments concern plaintiff's claim that federal agents withheld insulin to compel his assent that he understood the charges against him. So far as plaintiff seeks to assert an Eighth Amendment claim, these allegations are again insufficient. Plaintiff alleges that he "was not allowed to receive or administer to himself an insulin injection until he agreed to recant his previous denial that he 'understood' the charges made" and that the agents "failed to allow or refused to allow [plaintiff] to be administered his daily injection prior to making his first 'restricted special appearance' in court." (Compl. ¶ 23). The allegations fail to detail what federal agents knew regarding plaintiff's diabetic condition, or to give sufficient

12

facts for the court to determine that their conduct rose above "mere negligence." See Farmer, 511 U.S. at 835. Accordingly, they fail to state a claim for denial of medical care.

In sum, plaintiff's remaining claims based upon treatment from the BOP and conduct of federal agents at his arraignment suffer from a failure to particularize facts pertinent to key elements of the claims. With respect to these claims only, the court will allow plaintiff to particularize his complaint to address deficiencies noted above regarding these latter claims. Plaintiff is DIRECTED to file within 30 days an amended complaint stating the injury stemming from defendants' actions or inactions and the alleged facts to support his claim. Plaintiff further is on notice that he must name as defendants the specific individuals who violated his constitutional rights, and connect the named defendants with the alleged conduct which resulted in the alleged violations.

Further, plaintiff is reminded that his amended complaint must comply with Rule 8. In addition, plaintiff is on notice that any amended pleading will constitute the complaint in its entirety, and the court will not comb his previous filings to glean any misplaced claims. Finally, plaintiff shall serve the amended complaint upon all named individual defendants, along with defendant North Carolina.

**CONCLUSION**

In accordance with the foregoing, the court GRANTS Federal Defendants' motion to dismiss (DE 10). Federal Defendants are DISMISSED WITH PREJUDICE. In addition, claims premised on the failures of defendant United States or its agents to recognize plaintiff's negotiable instruments are DISMISSED WITH PREJUDICE.

With respect to remaining claims, which lack particularity, plaintiff is hereby DIRECTED to file an amended complaint, naming as defendants the specific individuals who violated his constitutional rights, and particularizing his allegations in accordance with the foregoing discussion.

13

Plaintiff shall file his amended complaint within 30 days of the entry of this order, and shall serve the amended complaint on all named individual defendants and defendant North Carolina.

SO ORDERED, this the 30th day of January, 2015.

LOUISE W. FLANAGAN
United States District Judge